UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 25-81580-CIV-CANNON/McCabe

LUISA ANDERSON,

      Plaintiff,

v.

SCHOOL BOARD OF
PALM BEACH COUNTY, FLORIDA
and LINDEN CODLING,

      Defendants.

_____/

**ORDER ACCEPTING REPORT AND RECOMMENDATION WITH
SUPPLEMENTATIONS AND CLARIFICATIONS AND GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**THIS CAUSE** comes before the Court upon Magistrate Judge Ryon M. McCabe's Report

and Recommendation (the "Report") on Defendants' Motion to Dismiss (the "Motion") [ECF No.

22 (Report); ECF No. 8 (Motion to Dismiss)].  The Report recommends that the Court grant in

part and deny in part Defendants' Motion, allowing Plaintiff's various claims to proceed to

discovery with the exception of Plaintiff's FCRA retaliation claim in Count IV (which Plaintiff

has stipulated to dismiss) [*see* ECF No. 22].  Defendants filed Objections to the Report [ECF No.

24], to which Plaintiff responded [ECF No. 25].

The Court has reviewed the Report [ECF No. 22], Defendants' Objections and Plaintiff's

Reply thereto [ECF Nos. 24, 25], and Defendants' Motion, the related briefing, and the exhibits

attached thereto [ECF Nos. 8, 8-1, 8-2, 16, 16-1, 20].[1]  Fully advised in the premises, the Court

---

[1] As discussed below, the Court considers portions of the administrative record under the
incorporation by reference doctrine and/or takes judicial notice of those proceedings where
appropriate. *See Bryant v. Rich*, 530 F.3d 1368, 1375–76 (11th Cir. 2008) (permitting judge to act

accepts the ultimate conclusions in the Report to permit all of Plaintiff's claims to proceed with the exception of Count IV [ECF No. 22].  But the Court offers various clarifications and supplementations to the Report to address Defendants' objections; to expand certain incomplete and/or incorrect areas in the Report's analysis; and to clarify legal points of contention going forward.  Defendants' Motion [ECF No. 8] is **GRANTED IN PART** and **DENIED IN PART**.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Neither party objects to Judge McCabe's correct recitation of the facts, so the Court incorporates it herein for purposes of this Order.

To summarize, this is an employment discrimination case involving Plaintiff, a school guidance counselor formerly employed by Defendants School Board of Palm Beach County and Principal Linden Codling [ECF No. 1].  Plaintiff claims that she was subjected to various episodes of misconduct whilst in Defendants' employ.  Among other things, Plaintiff claims that she was screamed at by a fellow teacher when she refused to discuss a student's 504 plan in public view [ECF No. 1 ¶¶ 34–40], and that she witnessed at least two school employees abuse students by pulling them with "unnecessary physical force;" "manhandling" them; and "scream[ing in] their face[s]" [ECF No. 1 ¶¶ 57–61].  Plaintiff also alleges that she requested certain accommodations due to her ADHD disability, such as a temperature-controlled office, which she says were

---

as factfinder to address exhaustion of administrative remedies at the pleading stage, including by considering facts outside of the pleadings); *Tillery v. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) ("[I]n ruling on [Defendant's] Rule 12(b) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of Tillery's claims, the district court did not err in considering evidence outside the pleadings or in making fact findings as to exhaustion."); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("[T]he district court did not err in considering the exhibits attached to [Defendant's] motion to dismiss, including the Notification of Personnel Action and the . . . EEOC right to sue letter, because they were central to the claims in [Plaintiff's] complaint and were undisputed.").

necessary to her job performance and which the school failed to deliver [ECF No. 1 ¶¶ 71–73, 128–133].

Ultimately, after Plaintiff (1) protested that the school's Section 504 coordinator was mismanaging various students' 504 plans; (2) called the Florida Department of Children and Families ("DCF") to report the alleged physical abuse on the children as outlined above; and (3) requested various "reasonable accommodations" from the school, the School Board notified Plaintiff that her annual contract of employment would not be renewed for the following school year [ECF No. 1 ¶ 84], leading to Plaintiff's termination effective June 1, 2024 [ECF No. 1 ¶ 85].

On July 11, 2024, Plaintiff filed a Whistleblower Complaint with the School Board's Superintendent and proceeded through the School Board's administrative exhaustion procedures [ECF No. 1-1 pp. 4–5; ECF No. 1 ¶¶ 24–28]. After a five-day hearing before an administrative law judge, the administrative law judge issued an order recommending dismissal of Plaintiff's Whistleblower Complaint [ECF No. 1-1]. The School Board thereafter adopted that recommendation on September 10, 2025, as reflected in an administrative record filed in this case [ECF No. 1 ¶¶ 27–28; ECF No. 8-1 pp. 1–2]. Plaintiff did not file a subsequent appeal of that decision to the applicable Florida District Court of Appeal.

After Plaintiff failed to obtain relief through the School Board administrative proceeding, Plaintiff initiated this lawsuit, alleging violations of Florida's Public Whistleblower Act ("FWA"), Fla. Stat. § 112.3187(4)(a) (Count I); the Rehabilitation Act, 29 U.S.C. §§ 701 *et. seq.* (Count II); the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et. seq.* (Counts III (failure to accommodate) and IV (retaliation)), and Florida's Child Abuse Reporting statute (Count V), Fla. Stat. § 39.203. Defendants then filed the instant Motion to Dismiss Plaintiff's Complaint [ECF No.

8], which the Court referred to Magistrate Judge McCabe for a Report and Recommendation [ECF No. 11].

The Report is ripe for adjudication [ECF No. 22]. It recommends the Court grant in part and deny in part Defendants' Motion, allowing Plaintiff's various claims to proceed to discovery with the exception of Plaintiff's FCRA retaliation claim in Count IV (which Plaintiff has stipulated to dismiss) [ECF No. 22]. Defendants filed objections to the Report [ECF No. 24], to which Plaintiff responded [ECF Nos. 22, 24, 25].

## LEGAL STANDARDS APPLICABLE TO REFERRALS

To challenge the recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## DISCUSSION

Following de novo review of the Report, the Court agrees with Magistrate Judge McCabe's ultimate disposition of the Motion and therefore **ACCEPTS** the Report and **GRANTS IN PART** and **DENIES IN PART** the Motion, with several clarifications and supplementations contained herein (and as previewed above) [ECF No. 8].

**A. Even if the Report had considered the administrative record at the motion to dismiss stage, Plaintiff exhausted her administrative remedies under Fla. Stat. § 112.3187(8)(b).**

Plaintiff's Count I is brought under Florida's Public Whistleblowers Act ("FWA"), which prohibits governmental agencies in Florida from taking adverse employment actions against a

public sector employee based on the employee's disclosure of certain types of protected "information." Fla. Stat. § 112.3187(4). To bring a claim under the FWA, plaintiffs must satisfy a mandatory, pre-suit administrative exhaustion requirement, which allows a claimant to "bring a civil action . . . [w]ithin 180 days after entry of a final decision by the local governmental authority . . . ." Fla. Stat. § 112.3187(8)(b).

In the Motion, Defendants argue that Count I should be dismissed for lack of administrative exhaustion because a plaintiff seeking to bring a claim under the FWA in federal court first must appeal the administrative denial to the respective Florida District Court of Appeal, which Plaintiff undisputedly did not do [ECF No. 8 pp. 3–5; *see* ECF No. 24 pp. 2–4]. As support for this argument, Defendants cite portions of the administrative record, including the Final Order issued by the Schoolboard, which notified Plaintiff that she had "the right to seek judicial review" with Florida's "Fourth District Court of Appeal[]" should she feel she was "adversely affected" by the decision [ECF No. 8-1 p. 2]. Defendant also cites cases such as *Robinson v. Dep't of Health*, 89 So. 3d 1079, 1081 (Fla. Dist. Ct. App. 2012), which recognize a "general rule" in Florida that "exhaustion of administrative remedies includes pursuing an appeal from an administrative ruling where a method of appeal is available." *Id.*

Relying on the Complaint alone, the Report rejects Defendants' exhaustion argument and declines to consider additional materials provided by Defendant, including the DOAH record and the final order from the Schoolboard [ECF No. 22 pp. 6–7; ECF No. 8-1]. The Report also expresses hesitation about considering such administrative materials at the motion to dismiss stage [ECF No. 22 pp. 6–7 (refusing to "engage in fact-finding" regarding "litigation history of the DOAH case")]. Defendants take issue with this approach, emphasizing that (1) a court weighing a challenge to exhaustion at the pleading stage is permitted to consider exhaustion materials as a

5

precondition for suit [ECF No. 24 pp. 2–4]; and (2) once that extra material is considered here, it becomes clear that Plaintiff failed to exhaust her administrative remedies after being presented with the option to appeal to Florida's Fourth District Court of Appeal but choosing not to exercise it [ECF No. 14 pp. 2–4].

Upon review of this argument, the Court agrees with the Report's ultimate conclusion on exhaustion of Count I, but for different reasons.

As a methodological point, there is significant authority from the Eleventh Circuit indicating that a court may properly consider the administrative record in weighing an exhaustion challenge, so long as the parties "have sufficient opportunity to develop a record" on the exhaustion question. *See Bryant*, 530 F.3d at 1375.[2]  Based on that principle, the Court would have seen no impediment to considering the final order from the Schoolboard at the pleading stage, as Defendants raised their exhaustion argument in the Motion (with the final order attached), allowing Plaintiff to mount a challenge in opposition (which she did not) [*see generally* ECF No. 8-1; ECF No. 16].  To the extent the Report declined to review the administrative record because of potential fact disputes stemming from the parties' litigation history, no such fact-heavy examination would have been triggered to review (and accept the existence of) the final order issued by the School Board [*see* ECF No. 22 p. 7].

At any rate, the Report's failure to consider the administrative record does not change the ultimate answer, which is that Defendants' exhaustion challenge fails because Plaintiff satisfied

---

[2] *See also Tillery*, 402 F. App'x at 425 ("[I]n ruling on [Defendant's] Rule 12(b) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of Tillery's claims, the district court did not err in considering evidence outside the pleadings or in making fact findings as to exhaustion."); *Horne*, 392 F. App'x at 802 ("[T]he district court did not err in considering the exhibits attached to [Defendant's] motion to dismiss, including the Notification of Personnel Action and the . . . EEOC right to sue letter, because they were central to the claims in [Plaintiff's] complaint and were undisputed.").

the requirements of the relevant exhaustion statute—Fla. Stat. § 112.3187(8)(b)—before bringing suit.  As the plain language of that statute makes clear, it contains two preconditions for suit: (1) a final decision; (2) by a local governmental authority, without any additional requirement:

> (b) Within 60 days after the action prohibited by this section, any local public employee protected by this section may file a complaint with the appropriate local governmental authority . . . .  Upon hearing the complaint, the panel must make findings of fact and conclusions of law for a final decision by the local governmental authority.  **Within 180 days after entry of a final decision by the local governmental authority, the public employee who filed the complaint may bring a civil action in any court of competent jurisdiction** . . . .

Fla. Stat. § 112.3187(8)(b) (emphasis added).  Plaintiff satisfied both of those requirements here, as the parties do not dispute [ECF Nos. 24, 25].  Indeed, all agree that Plaintiff received a final judgment, attached by Defendants themselves to the Motion [ECF No. 8-1 pp. 1–2].  And all agree that said final judgment was entered by a "local government authority"—the Schoolboard—after a five-day administrative hearing in front of a DOAH administrative law judge [*see* ECF No. 8-1 pp. 1–2].  With both of the statutory preconditions satisfied, no more is necessary under Fla. Stat. § 112.3187(8)(b) for Plaintiff to exhaust her administrative remedies.

Defendants' main argument in rebuttal—that there was no "final decision" in the administrative proceedings because Plaintiff could have exercised her right to appeal to Florida's appellate courts—is unpersuasive.  That argument asks the Court to impose a condition that does not exist in the text of the statute itself, which again, merely requires a "final decision by a local governmental authority," Fla. Stat. § 112.3187(8)(b), not a "final decision" by the District Courts of Appeal.  The Court declines to dismiss Plaintiff's claim based upon an exhaustion mandate that does not exist in the applicable state law.  And to the extent there are cases in Florida suggesting a "general rule" that "exhaustion of administrative remedies includes pursuing an appeal from an administrative ruling where a method of appeal is available," *see, e.g.*, *Robinson*, 89 So. 3d at

1081, those cases are specific to the exhaustion schemes at issue in those cases and do not control the analysis here, which no Florida court has yet addressed. For instance, Fla. Stat. § 112.3187(8)(a)—which Florida's First District Court of Appeal considered in *Robinson*—expressly subjects final orders governing state employees to judicial review in the District Courts of Appeal under Fla. Stat. § 120.68. *See* Fla. Stat. § 112.3187(8)(a); Fla. Stat. § 112.31895(4)(b) ("Judicial review of any final order of the commission shall be as provided in s. 120.68."). The same cannot be said for Plaintiff's section 112.3187(8)(b) claim, which lies in the very same statutory section yet requires only a "final decision" by a "local governmental authority" to exhaust—nothing more.  Fla. Stat. § 112.3187(8)(b); *cf.* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012) (describing the interpretive canon of expressio unius to mean that the "expression of one thing implies the exclusion of others").

Accordingly, in this case, the text of section 112.3187(8)(b) must control, meaning that Plaintiff did not need to appeal her final decision to the District Courts of Appeal to fully exhaust her administrative remedies for the purposes of her section 112.3187(8)(b) claim.  Defendants' bid to dismiss Count I for failure to exhaust administrative remedies fails.

**B. Even if the Report had considered the administrative record at the motion to dismiss stage, the Report correctly determines that collateral estoppel is unlikely to apply in this case**.

Defendants' next objection is that, by declining to consider the DOAH administrative proceedings under the incorporation by reference doctrine, Magistrate Judge McCabe never properly reached their argument that the ALJ's factual findings in the five-day evidentiary hearing—and particularly the ALJ's finding that Plaintiff's non-reappointment was not retaliatory—collaterally estop Plaintiff from relitigating the same FWA claim here [ECF No. 24 pp. 5–6].

On this issue, Magistrate Judge McCabe is correct that consideration of the administrative record is not warranted or appropriate at the motion to dismiss stage to decide a question of collateral estoppel, which is generally raised as an affirmative defense [ECF No. 22 pp. 7–8 (citing *Sinai Holdings, LLC v. JPMorgan Chase Bank N.A.*, No. 23-cv-62159, 2024 WL 6992743, at *4 (S.D. Fla. April 29, 2024) (noting that claim preclusion is an affirmative defense that should not be raised on the motion to dismiss unless the elements are apparent from the face of the complaint))].

In any event, even if the Court had waded into the administrative record as requested by Defendants, the Court agrees with the Report's conclusion not to find collateral estoppel here. Collateral estoppel requires the invoking party to establish (1) the issue is identical to one decided in prior adversarial proceedings; (2) the issue was actually litigated; (3) the prior determination of the issue was critical and necessary to the earlier judgment; and (4) the standard of proof in the prior action was at least as stringent as the instant one. *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993). Defendants appeal to that doctrine here, saying that Plaintiff is collaterally estopped from litigating her FWA claim because the ALJ made various favorable factual findings in the administrative proceedings, including a finding that Plaintiff's non-reappointment was not retaliatory [ECF No. 24 pp. 5–6]. But returning to the text of section 112.3187(8)(b), the statute expressly contemplates a "civil action in any court of competent jurisdiction" to be filed directly after a "final decision by the local governmental authority." Fla. Stat. 112.3187(8)(b). As Magistrate Judge McCabe explains, Defendants' proposed regime (allowing findings in the mandatory administrative proceedings to govern subsequent civil suits) would place Plaintiff in an apparent catch-22—requiring Plaintiff to exhaust her administrative remedies but then providing Defendants an "airtight defense of collateral estoppel if a state agency determination on the merits

9

were given preclusive effect." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991); *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 152 (2015) ("When exhausting an administrative process is a prerequisite to suit in court, giving preclusive effect to the agency's determination in that very administrative process could render the judicial suit 'strictly pro forma.'").[3]  Defendants offer no caselaw or sound basis to accept that view.

**C. Plaintiff has plausibly alleged that Defendants failed to accommodate her under Florida's Civil Rights Act**.

Defendants additionally object to the Report's conclusion that Plaintiff has plausibly alleged a claim for failure to accommodate under Florida's Civil Rights Act, Fla. Stat. § 760.01 *et seq.* [ECF No. 24 p. 12].  Specifically, Defendants take issue with the lack of specificity in Plaintiff's allegations, claiming that Plaintiff has not done enough to put them on notice of the particulars of such a claim given the high level of "generality" in her pleading [ECF No. 24 p. 12]. Following de novo review, the Court disagrees; Plaintiff has done enough to plausibly allege that Defendant failed to accommodate her in violation of the FCRA.

To establish a failure to accommodate claim under the FCRA, Plaintiff must demonstrate that: (1) she was a qualified individual with a disability; (2) she made a specific request for a reasonable accommodation; and (3) her employer failed to provide a reasonable accommodation. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020).[4]

---

[3] Compare that explicit authorization for civil suit (no matter whether plaintiffs succeed in prosecuting administrative proceedings or not) to, for example, the similar administrative exhaustion scheme in Florida's Civil Rights Act—which allows a civil action to be filed *only* "[i]f the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred." Fla. Stat. §§ 760.11(4)(a), (7).  If the Florida legislature wanted the administrative proceedings to be factually conclusive in section 112.3187(8)(b) proceedings, then it could have limited civil suits to those plaintiffs who prevailed in front of the ALJ.  Here, it did no such thing.

[4] Although the Complaint does not pinpoint the applicable section of the Florida Civil Rights Act, Eleventh Circuit law is clear that Fla. Stat. § 760.10 provides the substantive standard for liability,

Plaintiff has plausibly alleged all three elements here.  On the first element, as far as being qualified for an accommodation, Plaintiff pleads that she suffers from a generalized anxiety disorder, which caused her to experience heightened levels of anxiety necessitating "a safe, cool place to regulate her anxiety or stress" [ECF No. 1 ¶¶ 128–131].  Defendants do not dispute that anxiety is a qualifying disability under the FCRA [ECF No. 24].  On the second element (which requires FCRA plaintiffs to specifically request a reasonable accommodation), Plaintiff alleges that she sought the following accommodations from Defendants:

> (a) to give Plaintiff a signal or verbal cue if her voice becomes too loud or too low; (b) to not yell at her; (c) [to provide] a controlled work environment where colleagues request a meeting, call her office or radio, or email her with questions instead of approaching her unexpectedly; (d) [to] identif[y] and reduc[e] . . . anxiety triggers; (e) [to provide] bathroom breaks when requested (with coverage if needed); and (f) [to] install[] a thermostat in her office and classroom with the temperature to be set at or below 74 degrees Fahrenheit to address an air conditioning issue.

[ECF No. 1 ¶ 132].  Plaintiff also claims that she was initially successful with these requests and that Defendants promised to grant Plaintiff three separate accommodations: a mechanism to buzz the front office for coverage for restroom breaks (as needed); a mailbox installed outside of her office door; and the temperature in her office to be set at 74 degrees Fahrenheit or lower [ECF No. 1 ¶ 133].  Finally, as to the third element (which requires plaintiffs to plausibly allege that a reasonable accommodation was not provided), Plaintiff alleges that Defendants failed to implement any of these promised accommodations (or, for that matter, any other accommodations)

---

and no party disputes that framework.  As relevant here, Section 760.10 makes it unlawful "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." *See* Fla. Stat. 760.10(a)(1); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 681 (11th Cir. 2018) (considering section 760.10 in analyzing a failure to accommodate claim).

11

[ECF No. 1 ¶ 134], even after she re-raised her concerns and told the school board that the lack of accommodations was "causing her to experience difficulties" [ECF No. 1 ¶¶ 71, 135–136].  As Judge McCabe concludes, all of this is sufficient to state a plausible claim and put Defendants on notice of the failure to accommodate claim against them.  To the extent Defendants argue that Plaintiff must provide further specificity at this stage [ECF No. 24 p. 12], the Court disagrees. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding the plausibility standard "does not require detailed factual allegations" (quotation omitted)).  And in any event, Plaintiff's allegations that Defendants failed to accommodate her are consistent with her failure to allege any "specific instances" of non-accommodation [ECF No. 25].  Defendants are free to challenge Plaintiff's claims on summary judgment or at trial; nothing in this Order should be construed as a comment on the merits of any of Plaintiff's claims.

**D. Plaintiff has plausibly alleged that Principal Codling is not immunized from individual liability under the doctrine of sovereign immunity**.

Defendants also argue that the Report errs in concluding that Fla. Stat. § 39.203—which provides a civil cause of action to protect persons who report child abuse, abandonment, or neglect from retaliation by their employers—authorizes a suit against Principal Codling in her individual capacity [ECF No. 24 pp. 13–15].  In Defendants' view, Florida's doctrine of sovereign immunity protects her from such a suit in light of her status as a public employee [ECF No. 24 pp. 13–15 (citing *S. Broward Hosp. Dist. v. Kaplan*, 393 So. 3d 743, 744 (Fla. Dist. Ct. App. 2024) (noting that sovereign immunity "bars claims against a government entity except for claims brought under the federal or state constitutions, claims based on a 'clear and unequivocal' legislative waiver of sovereign immunity, or contractual claims.")].

Following review of Defendants' objections, the Court agrees with the Report.

12

Section 39.203 provides that any person making a good faith report of child abuse, abandonment, or neglect "shall have a civil cause of action for appropriate compensatory and punitive damages against any person who causes detrimental changes in the employment status of such reporting party by reason of his or her making such report." Fla. Stat. § 39.203. The Report concludes that section 39.203 authorizes a suit against Principal Codling in her individual capacity, because that statute allows civil claims against "*any person* who causes detrimental changes in the employment status of such a reporting party by reason of his or her making such report" [ECF No. 22 (citing Fla. Stat. § 39.203)]. Defendant objects to that ruling, explaining that sovereign immunity bars a public employee from being held personally liable in tort based on any action committed "in the scope of her or his employment or function." Fla. Stat. 768.28(9)(a).

Defendant is correct that, under ordinary principles of sovereign immunity, Principal Codling may not be held civilly liable in tort. *Id.* But as Plaintiff points out, Fla. Stat. § 768.28(9)(a) also contains an exception to that general principle for officers, employees, or agents of the state who take such an act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* Accepting Plaintiff's allegations as true, as the Court is required to do at this stage, that exception plausibly applies here. According to Plaintiff, Principal Codling retaliated against her—and ultimately caused her non-reappointment—because Plaintiff reported suspected child abuse to DCF. Specifically, Plaintiff alleges that (1) Codling herself filed a competing DCF report that "spun the facts of the event to protect Assistant Principal Sanchez" [ECF No. 1 ¶ 61]; (2) on December 21, 2023, Codling "accused Plaintiff of ruining Assistant Principal Sanchez's career and livelihood by reporting Sanchez's actions to DCF" and "interrogated Plaintiff about admitting she contacted DCF" [ECF No. 1 ¶ 76]; (3) Codling "used threatening language and intimidation towards Plaintiff

13

because Codling understood that Plaintiff reported . . . Sanchez to DCF" [ECF No. 1 ¶ 158]; and (4) Codling thereafter "caused detrimental changes to Plaintiff's employment including . . . a negative observation[,] . . . several written directives, non-reappointment[,] and termination" [ECF No. 1 ¶ 159].  Taken as true, these allegations (and reasonable inferences therefrom) are sufficient to plead that Principal Codling did not merely carry out a routine, scope-of-employment personnel decision but instead caused Plaintiff's non-reappointment out of retaliatory, bad faith animus for Plaintiff's protected DCF report.  *See* Fla. Stat. 768.28(9)(a).  Plaintiff has plausibly alleged that Defendant Codling is subject to individual liability for the alleged tortious conduct. The Court expresses no opinion on the merits of this claim.

## E.  Additional Miscellaneous Objections

Finally, the Court provides brief clarifications on Defendants' other objections not yet addressed herein.

1.  Defendants argue that Magistrate Judge McCabe erred in "Refusing to Limit Count I to the Scope of the DOAH Complaint," asking the Court to take judicial notice of the DOAH Complaint and limit the scope of Plaintiff's claims to the allegations therein [ECF No. 24 pp. 6–7].  While Defendant is correct that the Court could consider the DOAH administrative record in its exhaustion analysis, *see supra* p. 6, the Court ultimately agrees with the Report's decision to reserve on this point for summary judgment [ECF No. 22 pp. 8], especially because Defendants failed to attach the DOAH Complaint to their Motion [ECF No. 8], and the DOAH Complaint is not contained within the administrative record as filed in this case.  Plaintiff is cautioned, however, that her theories in this case shall be limited to the scope of her administrative complaint plus any reasonable growth "out of th[at] charge."  *See Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  Allegations of new acts of

14

discrimination will not be considered.  *Id.* at 1279–80; *see Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985) ("The starting point for determining the permissible scope of a judicial complaint is the administrative charge and investigation.").[5]

2. Defendants further argue that Magistrate Judge McCabe "failed to conduct the granular, disclosure-by-disclosure" analysis required of Plaintiff's alleged protected disclosures under the FWA [ECF No. 24 pp. 7–9].  Specifically, Defendants argue that Plaintiff's alleged disclosures do not involve "protected information," because they do not allege "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare," or "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, . . . or gross neglect of duty committed by an employee or agent of an agency or independent contractor."  Fla. Stat. § 112.3187(5)(a)–(b).  Following an independent review of Plaintiff's alleged disclosures, the Court agrees with the conclusion in the Report that Plaintiff has plausibly alleged that her disclosures were protected under section 112.3187.  Crucially, as used in section 112.3187(b), "malfeasance" means "the doing of an act which a person ought not do at all," and "misfeasance" means "the improper doing of an act which a person might lawfully do."  *See Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 407 n.3 (Fla. 2001) (quoting *Malfeasance & Misfeasance*, Black's Law Dictionary (6th ed. 1990)).  Taking those broad

---

[5] To the extent Plaintiff asks the Court to limit the scope of Plaintiff's Complaint based on a similar limitation in the ALJ's Final Order, the Court declines to do so without viewing the DOAH Complaint itself.  In other words, the ALJ may be correct that some of the allegations in Plaintiff's Complaint exceed the scope of the prior DOAH Complaint, but without conducting an independent review of the source material, the Court declines to adopt those findings as conclusive here. Defendants may re-raise this argument on summary judgment.

definitions at face value—and combining them with a liberal interpretation of the FWA as directed by the Florida Supreme Court, *see Irven*, 790 So. 2d at 405 (holding that the Whistle-blower's Act "is remedial and should be given a liberal construction")—Plaintiff has plausibly alleged that she at least "suspected" acts of "gross mismanagement, malfeasance, [or] misfeasance" from Defendants and their employees. Fla. Stat. § 112.3187(5)(b).  For instance, a fellow teacher's pressuring Plaintiff to discuss a student's protected health information in a public hallway (in potential violation of FERPA and/or HIPAA) is plausible malfeasance [ECF No. 1 ¶¶ 34–39].  So is Plaintiff's reporting that teachers throughout Verde K-8 could not access student 504 plans just days before the students were to arrive for the school year (in potential violation of the Rehabilitation Act) [ECF No. 1 ¶¶ 45–50];[6] Plaintiff's reporting of an assistant principal using "unauthorized physical restraint on a Kindergarten student" that "caused bruising and marking[s] (signs of child abuse);" and Plaintiff's reporting of a paraprofessional "inappropriately and physically manhandl[ing]" students at school, as well as screaming in their faces [ECF No. 1 ¶¶ 57–58, 78–79].  For now, at least at the motion to dismiss stage, these allegations are sufficient to plead protected information under the FWA.

3. Last, Defendants argue at various points that the Report errs in determining that Plaintiff has plausibly alleged a causal connection between Plaintiff's reporting activity and her non-reappointment [ECF No. 24 pp. 9–10, 12–13].  For many of the reasons explained above, this contention is incorrect.  Most obviously, Paragraph 93 of Plaintiff's Complaint alleges that Codling "specifically cited to Plaintiff's protected activity and the statements and protected disclosures that she made as reasons for her recommendation to non-reappoint[] and terminate

---

[6] For this same reason, contrary to Defendants' assertions, Plaintiff has demonstrated "a good faith, reasonable belief that [Defendants] w[ere] engaged in unlawful employment practices" under the Rehabilitation Act.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Plaintiff," which independently provides direct indicia of retaliation [ECF No. 1 ¶ 93].   And contrary to Defendants' characterization [ECF No. 24 pp. 9–10], this is not a conclusory allegation.   In addition to Paragraph 93, Plaintiff alleges that (1) Codling filed a competing DCF report that "spun the facts of the event to protect Assistant Principal Sanchez" [ECF No. 1 ¶ 61]; (2) on December 21, 2023, Codling "accused Plaintiff of ruining Assistant Principal Sanchez's career and livelihood by reporting Sanchez's actions to DCF" and "interrogated Plaintiff about admitting she contacted DCF" [ECF No. 1 ¶ 76]; (3) Codling "used threatening language and intimidation towards Plaintiff because Codling understood that Plaintiff reported . . . Sanchez to DCF" [ECF No. 1 ¶ 158]; and (4) Codling thereafter "caused detrimental changes to Plaintiff's employment including . . . a negative observation[,] . . . several written directives, non-reappointment[,] and termination" [ECF No. 1 ¶ 159].   Plaintiff has pleaded a plausible causation link between Plaintiff's protected activity and her non-reappointment.

**CONCLUSION**

For all of these reasons, and upon full review of all of the parties' arguments even if not specifically delineated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report [ECF No. 22] is **ACCEPTED** in accordance with this Order and the clarifications contained therein.

2. The Motion [ECF No. 8] is **GRANTED IN PART** and **DENIED IN PART**.

3. Plaintiff's Count IV is **DISMISSED** by agreement of the parties [ECF Nos. 16, 24, 25]

4. On or before **August 11, 2026**, Defendants shall Answer Plaintiff's Complaint as narrowed by this Order [ECF No. 1].

CASE NO. 25-81580-CIV-CANNON/McCabe

**ORDERED** in Chambers at Fort Pierce, Florida, this 24th day of July 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

18